UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO.: 5:10-360-KKC

LANE'S END STALLIONS, INC.,     PLAINTIFFS

v.     **OPINION AND ORDER**

ASHLEY ANDREWS, ROBERT B. RAPHAELSON,
KNC INVESTMENTS, LLC and JERRY JAMGOTCHIAN,     DEFENDANTS

\* \* \* \* \* \* \* \* \*

This matter is before the Court on the Motion to Dismiss, Transfer Venue, or Stay (DE 7) filed by the Defendants Jerry Jamgotchian and KNC Investments, LLC. The Defendant Robert B. Raphaelson states he does not oppose the motion to transfer this action (DE 9). The remaining defendant Ashley Andrews has filed no response to the motion. The Plaintiff, Lane's End Stallions, Inc., has filed an objection.

## I. FACTS.

### A. The Syndicates.

This action involves two "syndicates," the members of which own two thoroughbred horses. The first syndicate is the Lemon Drop Kid Syndicate, the members of which own the thoroughbred Lemon Drop Kid. The Plaintiff Lane's End and Defendant Ashley Andrews are both members of the Lemon Drop Kid Syndicate. Andrews owns one share.

The second syndicate is the Kingmambo Syndicate, the members of which own the thoroughbred Kingmambo. Lane's End and Defendants Andrews and Raphaelson are all members of the Kingmambo Syndicate. Defendants Andrews and Raphaelson together own one share.

Pursuant to the agreements governing each syndicate (the "Syndicate Agreements"), Lane's End is the "Syndicate Manager." The agreements provide that each stallion shall stand at Lane's End Farm in Woodford County, Kentucky under Lane's End's supervision and management.

The Syndicate Agreements provide that the syndicate members cannot sell their interest in either stallion without first offering the other members the right of first refusal. The agreements provide that, when any member receives an offer to purchase his shares, the member must notify Lane's End as the Syndicate Manager who must then notify all the other members. Any member wanting to purchase the shares, must notify Lane's End within seven days.

**B.    KNC's Offers to Purchase.**

On September 7, 2010, Defendant Jamgotchian sent Lands End notices of KNC's offer to purchase syndicate shares. The first notice stated that Defendant Andrews had accepted KNC's offer to purchase Andrews' Lemon Drop Kid Syndicate share for $350,000. The second notice stated that Defendants Andrews and Raphaelson had accepted KNC's offer to purchase their Kingmambo Syndicate share for $175,000. According to the Notices, both purchase prices included a commission to Jamgotchian. Lane's End sent notice of the offers to the other syndicate members on September 9, 2010.

**C.    The Kentucky State Court Action.**

In its initial Complaint, which was filed in Woodford Circuit Court on September 15, 2010, Lane's End complained that the notices it received from Jamgotchian were insufficient. Lane's End asserted that neither notice sufficiently detailed the terms and conditions of the KNC offer and, specifically, failed to detail the commission to be paid to Jamgotchian. Lane's End asserted that the other syndicate members could not make an informed decision as to whether to exercise their right

2

to purchase the shares on the same terms and conditions as KNC because they were not sufficiently informed as to what those terms and conditions were.

Lane's End asked the state court for a temporary injunction requiring that Andrews and Raphaelson disclose all the terms and conditions of the KNC offers and requiring that Lane's End send a new notice to all syndicate members after receipt of all the terms and condition of the KNC offers, which would then start the 7-day deadline for the syndicate members to exercise their right of first refusal. Lane's End further asked to the state court to enjoin any transfer of ownership interest in either syndicate until syndicate members had an opportunity to exercise their right of first refusal.

On September 15, 2010, the state court granted Lane's End's motion for temporary restraining order enjoining any deadlines for the syndicate members to exercise their right of first refusal and any transfer of the ownership interest in the syndicates from Andrews or Raphaelson to KNC.

On September 29, 2010, KNC and Jamgotchian moved to dissolve the TRO asserting that all of the terms and conditions of the KNC offers had been fully disclosed to Lane's End including information regarding Jamgotchian's commission. (DE 1, Mem. on Motion to Dissolve TRO).

On that same day, Lane's End filed an Amended Complaint in which it asserts that, after the TRO was entered, Defendants Andrews and Raphaelson forwarded the Agreements of Purchase and Sale setting forth the terms of the KNC offers.

Lane's End asserts that the Lemon Drop Kid purchase agreement provides that KNC will pay Andrews $350,000 for the purchase of Andrews' interest in the syndicate, including a $50,000 payment to Jamgotchian as a commission for acting as dual agent. Lane's End asserts that the

3

Kingmambo purchase agreement states that KNC shall pay $175,000 to Andrews and Raphaelson for their interest in the Kingmambo syndicate, including a $50,000 payment to Jamgotchian as commission for acting as dual agent. Lane's End asserts that the agreements provide that KNC has 10 days after its receipt of the Syndicate Agreements to reject the transaction.

In its Amended Complaint, Lane's End states that it has advised Andrews, Raphaelson and KNC that it does not intend to notify the syndicate members of the terms of the offers until they notify Lane's End that KNC has elected to proceed with the transactions and that KNC's right to opt out of the transactions is extinguished.

Lane's End also asserts that the requirement that any syndicate member wishing to exercise his right of first refusal pay the $50,000 commission to Jamgotchian as dual agent violates KRS § 230.357 which requires that both the purchaser and seller must consent to one person acting as the agent for both.

Lane's End further asserts that the KNC offer deprives the other syndicate members of their right to purchase Andrews' and Raphaelson's interest in the syndicates on the same terms and conditions as KNC. This is because Jamgotchian is an owner of KNC. Thus, the commission to be paid to him, in effect, reduces KNC's purchase price by $50,000.

Lane's End asks for a declaration and injunction providing that it has no obligation to provide notice to the other syndicate members of the KNC offers until KNC is legally obligated to purchase the interest in the syndicates; that KNC shall notify Andrews and Raphaelson of its legally binding decision to purchase the interest on or before October 6, 2010; that Lane's End shall then send the notice of the KNC offers to the syndicate members; and that no transfer of shares shall occur until the syndicate members have had the right to exercise their right of first refusal.

Lane's End also asks for an injunction ordering that the purchase price to be paid for Andrews' interest in the Lemon Drop Kid Syndicate be $300,000 and that the purchase price for Andrews' and Raphaelson's interest in the Kingmambo Syndicate be $125,000.

Lane's End further asks the court for an injunction ordering that any syndicate member who does not consent to the $50,000 payment to Jamgotchian be required to pay a commission of only $15,000 as to the Lemon Drop Kid transaction and of $6,250 as to Kingmambo. Lane's End asserts that these commission payments are based on the industry standard of five percent.

On October 5, 2010, the Woodford Circuit Court conducted a hearing on Lane's End's motion for a temporary injunction and the Defendants' motion to dissolve the existing TRO. The court determined that neither motion was ready for a decision until the Defendants notified Lane's End of their intent to proceed with the transactions. The court further ordered the Defendants to provide any such notice by October 7, 2010.

On that date, KNC filed a notice in the Woodford Circuit Court stating that it had notified Andrews and Raphaelson and Lane's End of its acceptance of the Syndicate Agreements and the physical conditions of the stallions. The closings were conditioned on the stallions being alive at the time of the closing; on the closings occurring before October 18, 2010 unless the parties agreed to an extension; and on the stallions being insurable for mortality and permanent infertility. Lane's End filed a notice with the state court indicating that the insurability requirement could not be met as to Kingmambo and, thus, KNC had still not made a binding offer to purchase Kingmambo and Lane's End need not notify the other syndicate members of the offer to purchase the Kingmambo share.

On October 8, 2010, KNC filed an Amended Notice stating that the insurability requirement

5

had been deleted from its offer to purchase Kingmambo. On October 14, 2010, the Woodford Circuit Court entered an order setting Lane's End's motion for a temporary injunction and the Defendants' motion to dissolve the original TRO for a hearing to be conducted October 22, 2010.

**D.     The California State Court Action.**

On that same date, KNC and Jamgotchian filed an action in California state court against Lane's End, Andrews, Raphaelson, and unknown Defendants "DOES 1 through 10." In the California state court action, KNC and Jamgotchian ask the court to declare the following:

1)  that each syndicate member does not have to pre-approve and sign any agreement by a member to sell the member's share in the syndicate before the agreement to sell a share in the syndicate is valid and enforceable;

2)  that each syndicate member does not have to pre-approve and sign any agreement by a member to pay a commission in connection with the member's sale of his syndicate share;

3)  that the obligation to obtain the seller's consent to a commission has been satisfied under KRS § 230.357(4)(5) and the California Business and Professional Code after the sellers have agreed to the commission in writing and the sellers did not have to obtain the consent of any other syndicate member to the commission and sales agreements prior to entering into the agreements to sell their shares;

4)  and that the Kentucky state court is not the proper venue for any action to interpret and enforce the KNC agreements and that Lane's End must obtain a stay of the Kentucky state court action.

**E.     Removal of the Kentucky State Court Action to this Court.**

On October 15, 2010, the Defendants collectively removed the Kentucky state court action to this Court citing federal diversity jurisdiction. The Defendants KNC and Jamgotchian then filed the motion now before the Court. For simplicity's sake, the Court will refer to the movants collectively as the "Defendants" even though neither Andrews nor Raphaelson join in the motion.

The motion asks the Court to dismiss the action on the basis that venue is improper pursuant to Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1391(a); to transfer this action to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a) because California is a more convenient forum; or to stay this action pending the resolution of the California state court action. For the following reasons, the Court will deny the motion.

II.     ANALYSIS.

A.      **Whether the Eastern District of Kentucky is an Improper Venue.**

Venue is proper in this Court because "a substantial part of the events or omissions giving rise to [Lane's End's] claim occurred" in this district as required by 28 U.S.C. § 1391 (a)(2).

In their motion to dismiss, the Defendants assert that Lane's End's action is based upon the Agreements of Purchase and Sale between Andrews and Raphaelson and KNC for the purchase by KNC of Andrews' and Raphaelson's syndicate shares. The Defendants point out that those agreements contain a clause providing that the venue for any action associated with the agreements should be filed in Los Angeles County Superior Court. The Defendants further argue that a substantial part of the events giving rise to Lane's End claim occurred in California because KNC is located there and that is where Agreements of Purchase and Sale were executed. (DE 7 at 12; DE 20 at 3).

Lane's End, however, is not a party to the Agreements of Purchase and Sale. Thus, the forum-selection and choice-of-law clauses in those agreements cannot be binding on Lane's End.

Further, because Lane's End is not a party to the Agreements of Purchase and Sale, its action cannot be based upon those agreements. In its Amended Complaint, Lane's End asks for declaratory and injunctive relief regarding its obligation to provide notice to the other syndicate members under

the Syndicate Agreements and regarding the syndicate members' right of first refusal under the Syndicate Agreements. That request is clearly based on the Syndicate Agreements. Importantly, the Syndicate Agreements expressly provide that they are to be governed by Kentucky law and that venue for any action brought under the agreements is either this Court or the Woodford Circuit Court

It is true that in its Amended Complaint, Lane's End also asks the Court to alter the purchase price and the commission payment contained in the Agreements of Purchase and Sale between and among the Defendants. However, it appears to assert that it has a right to seek this relief pursuant to its position as Syndicate Manager or pursuant to its status as a member of each of the syndicates with a right of first refusal. Either way, and leaving aside the issue of whether Lane's End actually has any right to alter the purchase price and commission payment contained in the Agreements of Purchase and Sale, Lane's End's attempt to do so must also be based on the Syndicate Agreements. Again, Lane's End is not a party to the Agreements of Purchase and Sale.

Moreover, a substantial part of the events giving rise to Lane's End's claim occurred in this district. The Syndicate Agreements provide that both stallions shall stand at Lane's End Farm in Woodford County, Kentucky under Lane's End's supervision and management. The agreements further provide that the books and record of the syndicates will be maintained at Lane's End's offices in Woodford County, Kentucky and available for inspection there. The agreements further provide that meetings between the syndicate members shall occur in either Woodford or Fayette County, Kentucky.

Further, Lane's End states that the stallions are currently located in Kentucky; Lane's End's decisions and operations as Syndicate Manager take place in Kentucky; the notices sent by KNC and Jamgotchian regarding the sale of the shares at issue were sent to Lane's End's offices in Kentucky;

8

any notices of intent to exercise the right of first refusal will be sent from syndicate members to Lane's End's offices in Kentucky; and any notices sent from Lane's End to the syndicate members regarding the proposed sale of Andrews' and Raphaelson's shares in the syndicates will be sent from Lane's End's offices in Kentucky. Accordingly, a substantial part of the events giving rise to Lane's End's claim as Syndicate Manager occurred in this district making it a proper venue for the action.

**B. Whether this Court should Transfer this Action to California Federal Court for the Convenience of the Parties.**

The Defendants argue that the Court should transfer this action to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a). That statute provides that this court may transfer, "[f]or the convenience of parties and witnesses," any civil action to another district court where the case could have been brought.

A district court deciding a § 1404(a) motion to transfer "has broad discretion to grant or deny" that motion. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994)(citation omitted).

Factors guiding the decision include:

(1) the convenience of witnesses; (2) the location of relevant documents and relevant ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Overland, Inc. v. Taylor*, 79 F.Supp.2d 809, 811 (E.D. Mich. 2000).

In arguing that the Court should transfer this action, the Defendants again rely on the forum selection and choice-of-law clauses in the Agreements of Purchase and Sale between the Defendants. However, as discussed, Lane's End is not a party to those agreements and its action is not based on

9

them. Its action is based on the Syndicate Agreements which have Kentucky forum and choice-of-law clauses.

The Defendants also point out that two of them – KNC and Jamgotchian – are California residents. While this may make California a more convenient forum for KNC and Jamgotchian, California is not any more convenient for the other two defendants than Kentucky. Further, Kentucky is more convenient for Land's End.

The Defendants argue that the California state court action and this action involve overlapping issues of fact and law and that it would be a waste of parties' and the courts' resources to litigate actions in both states. This argument goes to abstention which will be discussed below but has nothing to do with whether this action should be transferred. Whether or not the Court transfers this action, there will only be one federal action and, thus, duplication of resources is not an issue.

The Defendants have put forth no reason warranting a transfer of this action to federal court in California.

C. **Whether this Court Should Stay this Action Pending the Resolution of the California State Court Action.**

In the alternative, the Defendants argue that the Court should stay this action until the California state court action is resolved. The legal basis for the Defendants' abstention argument is not clear. They cite *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) in their motion. Further, the *Colorado River* doctrine is applicable where, as here, there are concurrent federal and state actions. Accordingly, the Court assumes the Defendants rely on the principles of abstention set forth in that case.

"[T]he doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of the District court to adjudicate a controversy properly before it." *Id.* at 813 (citation omitted). To determine whether this Court should abstain from this matter under the *Colorado River* doctrine, the Court must first determine if there is a "parallel" state court proceeding. *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998). Actions are considered parallel if the parties are substantially similar and the claims arise from the same material facts. *Id.* at 340.

In its response brief, Lane's End assumes that this action and the California state action are parallel proceedings and, thus, the Court will do the same.

From *Colorado River*, federal courts have extrapolated six factors that may be weighed when considering abstention: (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state-court action to protect the federal plaintiff's rights; (7) the relative progress of the state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 886 (6th Cir. 2002). Nevertheless, "the decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16 (1983).

As to the first two factors, the state has not assumed jurisdiction over any res or property and,

as discussed above, this federal forum is at least as convenient as the California state court. As to any concern over piecemeal litigation, "[p]iecemeal litigation occurs when different courts adjudicate the identical issue, thereby duplicating judicial effort and potentially rendering conflicting results." *Romine*, 160 F.3d at 341. Even assuming that the California state court has been asked to adjudicate an issue identical to that before this Court, however, "the pendency of an action in the state court is no bar to the proceedings concerning the same matter in the federal court having jurisdiction." *Finch v. Thomas Asphalt Paving Co.*, 252 F.Supp.2d 459, 463 (quoting *Colorado River*, 424 U.S. at 817). Accordingly, the Court cannot abstain on this basis alone but must instead determine if "exceptional circumstances" exist in this case requiring abstention due to the danger of piecemeal litigation. *Id*.

The Court will blend its consideration of the fourth and seventh factors, with the focus "on "the relative progress of the state and federal proceedings." *Bates v. Van Buren Township*, 122 Fed. Appx. 803, 807 (6th Cir. 2004); *See also Moses*, 460 U.S. at 21-22 ("priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.") Lane's End indicates it has not even been served in the California action and that, upon being served, it intends to challenge the California court's personal jurisdiction over it. Thus, it would appear that this Court will be able to address the merits of this action sooner than the California court.

As to the fifth factor, this action involves only state law issues. However, the Syndicate Agreements provide that Kentucky state law governs and this Court can adjudicate these state law issues at least as easily as the California state court. As to the final two factors, there is no reason the state court could not protect Lane's End's rights and there is concurrent jurisdiction in this action.

After considering all of these factors, the Court finds no exceptional circumstances warranting abstention.

**III.    CONCLUSION.**

For all these reasons, the Court hereby ORDERS that the Motion to Dismiss, Transfer Venue, or Stay (DE 7) filed by the Defendants Jamgotchian and KNC Investments, LLC is DENIED.

Dated this 13th day of December, 2010.

Signed By:
*Karen K. Caldwell*
United States District Judge