UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
at LEXINGTON

CIVIL ACTION NO.: 5:10-360-KKC

LANE'S END STALLIONS, INC.,                                                          PLAINTIFF,

v.                            **OPINION AND ORDER**

ASHLEY ANDREWS, ROBERT B. RAPHAELSON,
KNC INVESTMENTS, LLC and JERRY JAMGOTCHIAN,             DEFENDANTS.

\* \* \*   \* \* \*   \* \* \*   \* \* \*

This matter is before the Court on the Motion for Temporary Injunction filed by the Plaintiff Lane's End Stallions, Inc.; the Motion for an Order Dissolving the Temporary Restraining Order and Requiring Lane's End to Send Notices of Offers to Purchase Shares to Syndicate Members filed by the Defendants Jerry Jamgotchian and KNC Investments, LLC; and the Motion to Deposit Funds filed by Lane's End. [DE 14].

    I.      **FACTS.**

    A.      **The Syndicates.**

This action involves two "syndicates," the members of which own two thoroughbred horses. The first syndicate is the Lemon Drop Kid Syndicate, the members of which own the thoroughbred Lemon Drop Kid. The Plaintiff Lane's End and Defendant Ashley Andrews are both members of the Lemon Drop Kid Syndicate. Andrews owns one share.

The second syndicate is the Kingmambo Syndicate, the members of which own the thoroughbred Kingmambo. Lane's End and Defendants Andrews and Raphaelson are all members of the Kingmambo Syndicate. Defendants Andrews and Raphaelson together own one share.

Pursuant to the agreements governing each syndicate (the "Syndicate Agreements"), Lane's End is the "Syndicate Manager." The agreements provide that each stallion shall stand at Lane's End Farm in Woodford County, Kentucky under Lane's End's supervision and management.

The Syndicate Agreements provide that the syndicate members cannot sell their interest in either stallion without first offering the other members the right of first refusal. The agreements provide that, when any member receives an offer to purchase his shares, the member must notify Lane's End as the Syndicate Manager who must then notify all the other members. Any member wanting to purchase the shares must notify Lane's End within seven days.

**B.     KNC's Offers to Purchase.**

On September 7, 2010, Defendant Jamgotchian sent Lane's End notices of KNC's offer to purchase syndicate shares. The first notice stated that Defendant Andrews had accepted KNC's offer to purchase Andrews' Lemon Drop Kid Syndicate share for $350,000. The second notice stated that Defendants Andrews and Raphaelson had accepted KNC's offer to purchase their Kingmambo Syndicate share for $175,000. According to the Notices, both purchase prices included a commission to Jamgotchian. Lane's End sent notice of the offers to the other syndicate members on September 9, 2010.

**C.     The Kentucky State Court Action and the September TRO.**

In its initial Complaint, which was filed in Woodford Circuit Court on September 15, 2010, Lane's End complained that the notices it received from Jamgotchian were insufficient. Lane's End asserted that neither notice sufficiently detailed the terms and conditions of the KNC offer and, specifically, failed to detail the commission to be paid to Jamgotchian. Lane's End asserted that the other syndicate members could not make an informed decision as to whether to exercise their right

2

to purchase the shares on the same terms and conditions as KNC because they were not sufficiently informed as to what those terms and conditions were.

Lane's End asked the state court for a temporary injunction requiring that Andrews and Raphaelson disclose all the terms and conditions of the KNC offers and requiring that Lane's End send a new notice to all syndicate members after receipt of all the terms and condition of the KNC offers, which would then start the 7-day deadline for the syndicate members to exercise their right of first refusal. Lane's End further asked to the state court to enjoin any transfer of ownership interest in either syndicate until syndicate members had an opportunity to exercise their right of first refusal.

On September 15, 2010, the state court granted Lane's End a temporary restraining order enjoining any deadlines for the syndicate members to exercise their right of first refusal and any transfer of the ownership interest in the syndicates from Andrews or Raphaelson to KNC.

**D.     The Motion to Dissolve the September TRO.**

On September 29, 2010, KNC and Jamgotchian moved to dissolve the TRO asserting that all of the terms and conditions of the KNC offers had been fully disclosed to Lane's End including information regarding Jamgotchian's commission. [DE 1, Mem. on Motion to Dissolve TRO]. This is the Motion to Dissolve that is currently pending before this Court.

Pursuant to 28 U.S.C. § 1450, the state court injunction is in full force and effect until dissolved or modified by this Court. This Court "may dissolve or modify injunctions, orders, and all other proceedings which have taken place in state court prior to removal." *Maseda v. Honda Motor Co., Ltd.*, 861 F.2d 1248, 1252 (11th Cir.1988).

### E. Lane's End's Second Motion for Temporary Injunction.

Also on September 29, 2010, Lane's End filed an Amended Complaint and a Second Motion for Temporary Injunction. This is the Motion for Temporary Injunction that is currently pending before this Court.

In its Amended Complaint, Lane's End asserts that, after the TRO was entered, Defendants Andrews and Raphaelson forwarded the Agreements of Purchase and Sale setting forth the terms of the KNC offers. Lane's End asserts that the Lemon Drop Kid purchase agreement provides that KNC will pay Andrews $350,000 for the purchase of Andrews' interest in the syndicate, including a $50,000 payment to Jamgotchian as a commission for acting as dual agent. Lane's End asserts that the Kingmambo purchase agreement states that KNC shall pay $175,000 to Andrews and Raphaelson for their interest in the Kingmambo syndicate, including a $50,000 payment to Jamgotchian as commission for acting as dual agent. Lane's End asserts that the agreements provide that KNC has 10 days after its receipt of the Syndicate Agreements to reject the transaction.

In its Amended Complaint, Lane's End states that it has advised Andrews, Raphaelson and KNC that it does not intend to notify the syndicate members of the terms of the offers until they notify Lane's End that KNC has elected to proceed with the transactions and that KNC's right to opt out of the transactions is extinguished.

Lane's End also asserts that the requirement that any syndicate member wishing to exercise his right of first refusal pay the $50,000 commission to Jamgotchian as dual agent violates KRS § 230.357, a Kentucky statute regarding dual agents that will be discussed below.

Lane's End further asserts that the KNC offer deprives the other syndicate members of their right to purchase Andrews' and Raphaelson's interest in the syndicates on the same terms and

4

conditions as KNC. This is because Jamgotchian is an owner of KNC. Thus, the commission to be paid to him, in effect, reduces KNC's purchase price by $50,000.

In its second Motion for Temporary Injunction, Lane's End asks for an injunction providing 1) that it has no obligation to provide notice to the other syndicate members of the KNC offers until KNC removes all conditions from its offer and is legally obligated to purchase the shares; 2) that KNC shall notify Andrews and Raphaelson of its legally binding decision to purchase the interest on or before October 6, 2010; 3) that Lane's End shall then send the notice of the KNC offers to the syndicate members and the syndicate members will have 7 business days to exercise their right of first refusal; and 4) that no transfer of shares shall occur until the syndicate members have had the right to exercise their right of first refusal.

Lane's End also asks for an injunction ordering that the purchase price to be paid by the syndicate members for Andrews' Lemon Drop Kid Syndicate share be $300,000 and that the purchase price to be paid by syndicate members for Andrews' and Raphaelson's Kingmambo Syndicate share be $125,000. Lane's End further asks the court for an injunction ordering that any syndicate member who does not consent to the $50,000 payment to Jamgotchian be required to pay a commission of only $15,000 as to the Lemon Drop Kid transaction and of $6,250 as to Kingmambo transaction. Lane's End asserts that these commission payments are based on the industry standard of five percent.

On October 5, 2010, the Woodford Circuit Court conducted a hearing on Lane's End's motion for a temporary injunction and the Defendants' motion to dissolve the September TRO. The court determined that neither motion was ready for a decision until the Defendants notified Lane's End of their intent to proceed with the transactions. The court further ordered the Defendants to

5

provide any such notice by October 7, 2010.

On that date, KNC filed a notice in the Woodford Circuit Court stating that it had notified Andrews and Raphaelson and Lane's End of its acceptance of the Syndicate Agreements and the physical conditions of the stallions. The closings were conditioned on the stallions being alive at the time of the closing; on the closings occurring before October 18, 2010 unless the parties agreed to an extension; and on the stallions being insurable for mortality and permanent infertility. Lane's End filed a notice with the state court indicating that the insurability requirement could not be met as to Kingmambo and, thus, KNC had still not made a binding offer to purchase Kingmambo and Lane's End need not notify the other syndicate members of the offer to purchase the Kingmambo share.

On October 8, 2010, KNC filed an Amended Notice stating that the insurability requirement had been deleted from its offer to purchase Kingmambo. On October 14, 2010, the Woodford Circuit Court entered an order setting Lane's End's motion for a temporary injunction and the Defendants' motion to dissolve the original TRO for a hearing to be conducted October 22, 2010.

On October 15, 2010, the Defendants collectively removed the Kentucky state court action to this Court citing federal diversity jurisdiction. As a result, Lane's End's Second Motion for TRO and KNC and Jamgotchian's Motion to Dissolve the September TRO are now pending before this Court.

The Second Motion for TRO and Lane's End's Amended Petition for Declaration of Rights and Temporary and Permanent Injunctive Relief request the same relief. At a teleconference, all parties agreed that the pending motions and the merits of this case in its entirety may be resolved on the briefs in the record without a hearing. The parties agreed that no further briefing or discovery

is required. The Court granted the parties leave to file a brief statement of the issues and all parties except Raphaelson have done so.

## II. ANALYSIS.

### A. Motion to Dissolve the September TRO.

The September TRO entered by the state court should be dissolved. That TRO was based on Lane's End's assertions in its initial Complaint and Motion for Temporary Injunction that the notices it received from Jamgotchian insufficiently detailed the terms and conditions of the KNC offer and failed to detail the commission to be paid to Jamgotchian.

There is no dispute that KNC has now sufficiently disclosed to Lane's End all of the terms and conditions of the KNC offers including information regarding Jamgotchian's commission. Accordingly, the TRO will be dissolved. The issue is whether this Court should grant a second TRO or, more precisely, a preliminary injunction.

### B. Second Motion for Temporary Injunction.

#### 1) When Lane's End must Notify Syndicate Members of the KNC Offers.

In its Statement of the Case, Lane's End states that the issues are "when the notices to the Syndicate Members must be sent and what should be their content." Thus, it indicates that an issue remains as to when Lane's End must send notices of the KNC offers to the other syndicate members. While this may have been an issue earlier in this action, now there is no dispute that KNC has made legally binding offers to purchase the syndicate shares and Andrews and Raphaelson have accepted those offers. Thus, under the agreements, Lane's End must immediately provide notice to the syndicate members of the KNC offers.

The agreements provide that, "any Owner who receives an offer to transfer a Fractional

Interest or Interests which he is willing to accept shall notify the Syndicate Manager in writing, stating the name of the proposed transferee, the terms of the offer..." The Syndicate Manager is obligated, "*immediately* upon receipt of such notice," to notify all the other Owners of the offer. [DE 1, Motion to Dissolve, Syndicate Agreement § 5.3 (c)].

While Lane's End asserts that the issue of when it must provide notice to the syndicate members remains an issue, it does not address the issue in its Statement of the Case. The Court recognizes that Lane's End cannot provide notice until this Court resolves the issue of what the notice should include. Otherwise, the Court sees no reason that Lane's End should not provide the required notice. Accordingly, immediately upon receiving this Court's ruling, Lane's End must provide the notice to the other syndicate members of the KNC offers as required under the agreements.

### 2) What the Notice Should State.

The second issue raised by Lane's End is what the notices from it to the syndicate members should state. The agreements provides that the notice must include only "the name of the proposed transferee" and "the terms of the offer." [DE 1, Motion to Dissolve, Syndicate Agreement § 5.3 (c)].

Lane's End argues that the notice should also advise syndicate members that they can validly exercise their first refusal rights by matching the amount KNC has offered to pay for the shares less the $50,000 commission payment to Jamgotchian. Lane's End argues the notice should further advise syndicate members that they can reject the $50,000 commission payment to Jamgotchian and pay a commission of only five percent of the purchase price which Lane's End argues is the industry standard.

Under even the case law most favorable to Lane's End on this issue, the syndicate members must match KNC's offer, including the commission payment to Jamgotchian. In *Reef v. Bernstein*, 504 N.E.2d 374 (Mass. App. Ct. 1987), the court held that the holder of the right of first refusal need not include the commission payment in his offer to be deemed to have validly exercise the right of first refusal. *Id*. at 601. However, the court made clear that ruling applies only where the seller does *not* remain obligated to pay the broker's commission when the sale is made, not to the third party, but to the holder of the first refusal right. *Id*. The court stated "[w]e agree. . .that if a seller is obligated to pay a brokerage commission and remains liable for the commission after a right of first refusal is exercised, the exercise should include the amount of the commission." *Id. See also Id.* at 603 n.6.

The agreements between KNC and Andrews and Raphaelson specifically provide that, "[i]n the event the share is matched by the Syndicate, the Commission due Agent shall be paid by Seller to Agent within twenty four (24) hours after Seller has received payment from the Syndicate for acquisition of the Matched Share." [DE 1, Amended Petition, Ex. 1, 2]. Thus, even under *Reef*, because Andrews and Raphaelson remain obligated to pay the commission even if they sell to a syndicate member and not KNC, to validly exercise their first refusal rights, the syndicate members must include the commission payment in their offer.

Lane's End argues that KRS 230.357(4) and (5) require a different outcome. Those statutes prohibit a person like Jamgotchian from acting as a dual agent in the sale of an equine interest and from receiving any commission above $500 in any such transaction without the prior knowledge and written consent of both the purchaser and seller.

More specifically, KRS 230.357(4) provides:

9

(4) It shall be unlawful for any person to act as an agent for both the purchaser and the seller, which is hereby defined as a dual agent, in a transaction involving the sale, purchase, or transfer of an interest in an equine without:

(a) The prior knowledge of both the purchaser and the seller; and

(b) Written consent of both the purchaser and the seller.

And KRS 230.357(5) provides:

(5) It shall be unlawful for a person acting as an agent for either a purchaser or a seller or acting as a dual agent in a transaction involving the sale, purchase, or transfer of an interest in equine to receive compensation, fees, a gratuity, or any other item of value in excess of five hundred dollars ($500) and related directly or indirectly to such transaction from an individual or entity, including any consigner involved in the transaction, other than an agent's principal, unless:

(a) The agent receiving and the person or entity making the payment disclose in writing the payment to both the purchaser and seller; and

(b) Each principal for whom the agent is acting consents in writing to the payment.

Lane's End argues that, because these statutes give purchasers the right to consent to the payment of a commission to a dual agent, then purchasers also have the right to refuse to pay the commission to a dual agent. Thus, argues Lane's End, the syndicate members should be advised that they have the right to refuse to pay the commission to Jamgotchian.

However, under the agreements, the syndicate members have the right to purchase the syndicate shares "on the same terms" as the offer accepted by Andrews and Raphaelson. [DE 1, Motion to Dissolve, Syndicate Agreement § 5.3 (c)]. This means the other syndicate members have a right to purchase the shares on the same terms as KNC has agreed to including the purchase price and the payment of the commission to Jamgotchian. Syndicate members do not have a right to reject portions of the terms of the offer and accept other portions.

Pursuant to KRS 230.357(4) and (5), Jamgotchian has a duty to disclose his dual agency and

the commission payment he will receive to the other syndicate members. Further, the syndicate members have a right to refuse to consent to the dual agency. However, KNC and Andrews and Raphaelson have already consented to the dual agency, and the commission payment and the dual agency are part of KNC's offer to buy the Andrews and Raphaelson shares. Under the agreements, the other syndicate members are not required to purchase the Andrews or Raphaelson shares or to pay the commission. But, if the syndicate members want to purchase the shares, they must purchase them on same terms as KNC including consent to the dual agency and payment of the commission.

Lane's End argues that this case is different from *Reef* because the commission payment is owed to Jamgotchian who is also an owner of the potential purchaser, KNC. Thus, argues Lane's End, by requiring the seller to pay an above-market commission payment to him, Jamgotchian has been able to prevent any syndicate member from matching his offer. Lane's End argues that the syndicate members cannot offer the same price for the shares as KNC because, unlike KNC, they will not get $50,000 back after the deal closes.

The Court has no evidence that the $50,000 commission payment is unusually large. Andrews and Raphaelson have agreed to pay it and it is unclear to the Court why they would agree to an unwarranted commission payment. Nor is there any evidence that the KNC offers are above the market value of the shares. But, even if the evidence showed that the $50,000 payment was outrageous and, as a result, the KNC offers were well above market, there is nothing that allows this Court to order that the syndicate members can exercise their right of first refusal by offering less for the shares than KNC has offered.

As the *Reef* court points out, the syndicate agreements could have easily been drafted to prevent this situation. *Reef*, 504 N.E.2d at 602 n. 5. They could have specifically provided that the

syndicate members validly exercise their first refusal rights when they match the third party's price, *excluding* any commission payment owed by the seller to the broker. The agreements do not provide that.

KNC has offered to buy Andrews' and Raphaelson's shares in the Lemon Drop Kid and Kingmambo Syndicates for $350,000 and $175,000, respectively. Andrews and Raphaelson have agreed to pay a $50,000 commission to Jamgotchian and are obligated to do so whether a syndicate member or KNC purchase the shares. The agreements provide that the other syndicate members can purchase the shares "on the same terms" as KNC. [DE 1, Motion to Dissolve, Syndicate Agreement § 5.3 (c)]. The Court has no basis for ruling that the other syndicate members can purchase the syndicate shares for any amount less than KNC's offer.

### C.  MOTION TO DEPOSIT FUNDS [DE 14].

Lane's End has also moved for leave to deposit funds with the Court. It asserts that under the agreements, it is required to make monetary distributions to the syndicate members based on their ownership of syndicate shares. It further asserts that it is now in possession of checks totaling $81,236.72 which represents distributions owed to Andrews and Raphaelson. Lane's End asserts that KNC argues it is entitled to the distributions and Andrews and Raphaelson argue that they are entitled to the distributions.

Lane's End seeks to deposit the funds into court pursuant to Federal Rule of Civil Procedure 67(a) which provides that "[i]f any part of the relief sought is a money judgment or the disposition of a sum of money or some other deliverable thing, a party. . . may deposit with the court all or part of the money or thing. . ."

The Court will deny the motion. Lane's End's Complaint does not seek a money judgment

or the disposition of a sum of money. This Court has not been asked to resolve the issue of who is entitled to the distributions. Accordingly, depositing the money with the Court would serve no purpose.

### III. CONCLUSION.

Andrews and Raphaelson have accepted KNC's offer to purchase syndicate shares and have notified Lane's End, as Syndicate Manager, of the terms of the offer and the proposed transferee. Accordingly, the Court hereby ORDERS as follows:

1) Lane's End SHALL, immediately upon receipt of this Opinion and Order, notify the other syndicate members of KNC's offer to Andrews and Raphaelson. The notice shall provide the name of the proposed transferee (KNC Investments, LLC) and the terms of KNC's offer including any commission paid to Jamgotchian as dual agent for the buyer and seller;

2) Lane's End's Motion for Temporary Injunction [DE 1] is DENIED;

3) KNC's Motion for an Order Dissolving the Woodford Circuit Court's Temporary Restraining Order and Requiring the Plaintiffs to Send Notices of Offers to Purchase Shares to Syndicate Members [DE 1] is GRANTED;

4) Lane's End's Motion to Deposit Funds is DENIED [DE 14]; and

5) A judgment shall be issued contemporaneously with this Opinion and Order.

Dated this 28th day of January, 2011.



Signed By:
*Karen K. Caldwell*
United States District Judge